[Civ. No. 3727. Third Appellate District.—May 16, 1929.]

HENRY IRER, Respondent, v. J. D. GAWN et al., Respondents.

H. M. BUCHANAN, Appellant, v. W. J. KITTS et al., Respondents.

[Civ. No. 3728. Third Appellate District.—May 16, 1929.]

HENRY IRER, Respondent, v. J. D. GAWN et al., Respondents.

H. M. BUCHANAN, Respondent, v. W. J. KITTS, Appellant.

[Civ. No. 3729. Third Appellate District.—May 16, 1929.]

HENRY IRER, Respondent, v. HAMMOND LUMBER COMPANY (a Corporation) et al., Respondents; J. D. GAWN, Appellant.

Carleton & Keating and Frank E. Carleton for Appellant Buchanan.

Max Schleimer for Appellant Gawn.

Raymond B. Wells and Albert E. Sherman for Respondents.

THOMPSON (R. L.), J.—From the judgment and findings covering a group of three consolidated cases which involved an accounting of a joint adventure to construct a bungalow court, several appeals were perfected and will be considered conjointly.

The plaintiff Irer owned three lots in the city of Los Angeles. December 1, 1923, he entered into a written contract with the appellant Gawn to engage in a joint adventure, by the terms of which they agreed to construct a bungalow court on these lots. For the purposes of this enterprise the lots were valued at $10,000. Gawn contributed $4,000, which he secured by obtaining credit for $2,200 to purchase materials for the bungalow court from the Hammond Lumber Company, in payment for which he transferred to that company a trust deed upon other property. The remaining $1800 he procured by transferring to

W. J. Kitts a note and mortgage, with instructions to sell the securities and pay as directed existing bills for labor and materials also used in the building. An additional sum of $20,000 was raised by mortgaging the property. Two-sevenths undivided interest in the property was conveyed to Gawn. The contract provided that in the event of a sale of the property each party was to be first reimbursed the amount of his contribution to the enterprise, after which the net proceeds of sale were to be equally divided between them. There was no provision concerning the subject of losses. Regarding the obligation for paying the costs for construction in excess of the initial sums contributed, the contract provided (paragraph eight): "If the said sum of $4000 and the proceeds of said mortgage in the sum of $20,000 shall not be sufficient for the erection and construction of said bungalow court . . . each of said parties shall forthwith advance one-half of the amount or amounts necessary for the completion of the improvement." After providing for reimbursement for the original specified sums of contribution, the contract declared that (paragraph fifteen): "In the event of a sale . . . each party shall be entitled to one-half of the net profits of said matter." By the following June all of the funds were expended in the process of constructing the bungalow court. It was still incomplete and required several thousand dollars to finish the contract. Dissensions arose between the parties. Both refused to expend more money on the enterprise, and the work ceased. The plaintiff Irer thereupon commenced suit for dissolution of the relationship which existed between them, and for an accounting. The appellant Gawn answered the petition and filed a cross-complaint praying that "said joint venture may be dissolved"; that a receiver be appointed and that an accounting be had. Upon application to the trial court both W. J. Kitts and the Hammond Lumber Company, to whom the appellant Gawn had transferred securities to obtain credit for his share of the contribution to the joint adventure, were made party defendants, and each filed a separate cross-complaint for the value of the materials furnished. A receiver was duly appointed by the court and the bungalow property was sold and conveyed to H. M. Buchanan for $2,000, subject to all existing encumbrances, liens and claims. Buchanan was then also made a

party defendant and filed a cross-complaint setting up his equities. Prior to Buchanan's appearance as a defendant in the Irer case he had commenced a separate suit for accounting against W. J. Kitts and the Redlands Building and Loan Association as holders of the Gawn note and mortgage for $1800, claiming that they were a part of the assets of the enterprise, which he had purchased with the bungalow property. These suits were subsequently consolidated for trial. An accounting was had, resulting in a conflict over several items. Findings were adopted and an interlocutory decree was rendered. Subsequently on motion this decree was set aside and modified conclusions of law were filed, based upon which an amended judgment was entered. The chief change adopted in these findings and judgment, of which the appellant Gawn complains, is that the court finally held that each of the joint adventurers, Irer and Gawn, were bound to pay one-half of the losses of the enterprise. Separate notices of appeal were filed by the defendant Gawn from each of said judgments and another appeal was taken from the order setting aside the first findings and decree. Both Kitts and Buchanan also perfected separate appeals from the last judgment entered and from the order setting aside the first findings and decree. Gawn's appeal is presented by means of a clerk's transcript prepared pursuant to section 953a of the Code of Civil Procedure. The other appeals are presented in the form of bills of exceptions, including, however, no evidence, but being composed only of the judgment-roll and the proceedings necessary to the prosecution of the appeals.

In the several appeals which have been perfected in this combination of consolidated cases, numerous grounds of alleged error are urged, among which it is contended that the court erred in failing to find that the transaction constituted a joint adventure; or that the contract was breached by the appellant Gawn. It is further asserted that the assets of the enterprise were distributed between the parties in improper proportions; that the court was without jurisdiction to set aside the original findings and judgment, or to modify and enter the final judgment; that the court erred in charging each of the joint adventurers with the obligation of paying one-half of the net loss of the enterprise, instead of fixing the relative proportions of loss according to

the value of their respective contributions. Finally, it is asserted that the findings and judgment are not supported by the evidence; that the trial judge was guilty of misconduct, and that the appellant Gawn was not accorded a fair trial.

■ In both the original and amended conclusions of law the court did correctly find "That the said agreement . . . constituted a joint adventure." The single transaction of becoming joint owners of real property upon which a bungalow court is constructed for sale from the joint contributions of the interested parties, under the circumstances disclosed by the record in these cases, clearly indicates that the parties intended to create a joint adventure. The nature of this transaction, as a joint adventure, is not changed by the fact that the agreement incidentally provided that the respective parties were to render personal services in the construction of the buildings and when so employed they were to receive $10 per day, which allowance was to be charged as "items of expense in the construction." ■ But so far as the interests of the principals in this transaction are concerned it is immaterial whether it be deemed to be a copartnership or a joint adventure, for the legal principles which are applicable are the same. (14 Cal. Jur. 760, sec. 2; *Butler* v. *Union Trust Co.*, 178 Cal. 195 [172 Pac. 601].)

It is asserted by the appellant Gawn that the court erred in failing to find that the contract of joint adventure was broken by him; that this is fatal for the reason that the losses must be borne alone by the party who is guilty of the breach. In the present case, however, the joint adventure was apparently terminated by mutual consent. The pleadings allege without dispute, and the court found that dissensions arose between the parties, and that the operations in the construction of the bungalow court ceased about June 1, 1924, leaving the building incomplete, with unpaid bills in the aggregate sum of about $10,000 and that the respective parties agreed to terminate the venture, hold an accounting and appoint a receiver to take charge of the property and liquidate the debts. In truth the appellant Gawn prayed for this very relief in his cross-complaint. ■ It is unnecessary to adopt findings upon a subject upon which no issue is presented by the pleadings. (24 Cal. Jur. 952, sec. 191.) It was therefore unnecessary for the court to

adopt findings on this subject. The court subsequently ordered the receiver to sell the property to satisfy the obligations. ■ An agreement of joint adventure may be terminated at any time by the mutual consent of the contracting parties. (33 C. J. 848, sec. 21; *Nevins* v. *Heckscher,* 223 N. Y. 551 [119 N. E. 1061].) ■ In the event of a dissolution of a joint adventure either of the parties to the enterprise may require its property to be applied to the discharge of the valid debts. (Sec. 2405, Civ. Code.) In the present cases the amounts contributed by the respective parties were not equal. By the terms of the contract it was agreed that the value of the lots which were contributed by the plaintiff Irer was $10,000, while the appellant furnished only $4,000 to the enterprise. In spite of these unequal contributions, the contract provided that the "net profits shall be divided equally." It is true that the contract conveyed to the appellant Gawn only a two-sevenths undivided interest in the land, which was his share according to the relative proportion which his contribution of $4,000 bore to the agreed value of the property, which was estimated at $10,000. The aggregate amount which was contributed was therefore $14,000, two-sevenths of which the defendant Gawn supplied. ■ The relative amounts contributed to a joint adventure do not necessarily determine the proportions of profits or losses which are to be enjoyed or borne by each of the interested parties, unless the contract so provides. In 33 C. J. 861, section 67, it is said:

■ "In the absence of an express agreement between the parties to a joint adventure as to the proportions in which they are to share in the profits thereof, the law presumes that they intended that each should share equally with the others, notwithstanding an inequality in the amounts contributed by them to the capital employed in the venture."

Reason prompts the application of the same rule to the participation in the losses of such an enterprise, where the contract fails to specify the relative obligations of the parties. (14 Cal. Jur. 762, sec. 3.) The rule prescribed by the statutes of California with respect to partnership profits and losses announces only the common-law doctrine which is applicable to the circumstances of the present cases. Section 2403 of the Civil Code provides:

"In the absence of any agreement on the subject the shares of partners in the profit or loss of the business are equal, and the share of each in the partnership property is the value of his original contribution, increased or diminished by his share of profit or loss."

This means that in the event of the termination of a contract of joint adventure, the respective parties are entitled to be reimbursed to the extent of the value of their original contribution less their proportion of the loss sustained. Section 2404 of the Civil Code also provides that:

"An agreement to divide the profits of a business implies an agreement for a corresponding division of its losses, unless it is otherwise expressly stipulated."

These sections of the code are in accord with the common-law rule applicable to the relationship of a partnership or joint adventure, where the contract is silent as to the participation in losses. Whatever inferences may be drawn from the contract in the present cases lead to the conclusion that it was the intention of the parties to participate equally in the losses as well as the profits of the enterprise. It follows that the court therefore properly held that the respective parties to this joint adventure were bound to participate equally in the losses.

The appellant Gawn complains of alleged misconduct and prejudice on the part of the trial judge, depriving him of a fair trial. It is asserted that while he was a witness and testifying in his own behalf in support of a claim for $805 for personal services as carpenter and care taken of the premises for 80½ days between May 17 and August 14, 1924, at the agreed rate of $10 per day, the court became displeased with the conduct of the witness and criticised the unsatisfactory character of his evidence. In a colloquy with counsel, the judge said: "I think this man did some work, Mr. Wells, during that time. I think he has padded his bill very badly. . . . I don't blame the referee for disallowing the claim entirely."

Later, in reply to this appellant's attorney, the court again said: " . . . To be very frank with you . . . I was rather disgusted with your client on the witness stand, his manner of answering questions, and I came to the conclusion he was padding his report. I didn't want to do him an injustice. I could just as easily have said, I approve the report of

the referee (who disallowed the entire bill), and let it go (without allowing him anything on his claim for $805). . . . Your client impresses me he wasn't entitled to anything.''

The record discloses evidence which tends to warrant the court in discrediting the merits of this claim. It included only twenty-one days' actual carpenter work. The balance appears to have been for care of the premises to August 14th. But the construction work ceased June 1st, and this suit was commenced June 4, 1924. It may well be said there is not much merit in a claim for more than sixty days' pay at ·$10 per day for a mere inspection of the premises after the work ceased and the suit for accounting was commenced. The record is indeed unsatisfactory with respect to this claim. The referee disallowed this entire claim and the court seemed satisfied that nothing should have been allowed, yet with an evident disposition to compromise it, out of an abundance of precaution for appellant's welfare, he allowed him $320. This procedure may not be said to indicate a prejudiced mind on the part of the court or unfairness toward this appellant. Certainly no misconduct on the part of the judge is shown. ■ No objection or exception to these remarks was reserved by the appellant. The question of prejudice on the part of the trial judge is raised for the first time on appeal. In order to avail himself of the benefit of alleged prejudicial utterances of a trial judge, exception to the remarks or an assignment of misconduct must be reserved during the process of the trial. (*Compton-Gardena Milling Co.* v. *McCartney,* 69 Cal. App. 708, 710 [231 Pac. 764]; *Franceschi* v. *Nardi,* 77 Cal. App. 78, 81 [246 Pac. 130]; *Hughes* v. *Hartman,* 206 Cal. 199 [273 Pac. 560].) ■ In support of the validity of this claim it is urged that plaintiff's attorney acknowledged its merit by offering to allow one-half of the claim. He did say: ''I think the testimony shows conclusively that the bills are padded. . . . I am willing, for the purpose of saving time . . . that one-half of this amount claimed be allowed.'' This offer to compromise was, however, not accepted. It was specifically made in the interest of saving time. A proffer of compromise under such circumstances is not an admission of the merit of the claim. (Jones on Evidence, 3d ed., 437, sec. 291; 5 Cal. Jur. 408, sec. 20.)

The appellant Gawn contends that the amended findings and judgment, to the effect that the fund of $1800 in the possession of the defendant Kitts belongs to the joint adventure and must be paid to the receiver of the enterprise, are not sustained by the evidence. In support of this assertion no evidence whatever is printed in his briefs, nor is any reference made to the typewritten record where the subject may be found. In the absence of a compliance with supreme court rule VIII, part 5, as amended in 1928, no consideration will be given on appeal to a mere declaration that specific findings or the judgment is not supported by the evidence. It would require too arduous a task for an appellate judge to search the record to confirm or disprove a general statement not supported by any attempt to quote the evidence, or point out the defect relied upon. It is true that upon this subject the construction of section 953c of the Code of Civil Procedure has been modified by the supreme court rule above cited, since the decisions were rendered in *Wong Ah Sure* v. *Ty Fook*, 37 Cal. App. 465 [174 Pac. 64], and *Jones* v. *Express Pub. Co.*, 87 Cal. App. 246 [262 Pac. 78]. That rule, however, still requires the substance of the record relied upon to be printed either in narrative form or otherwise, with reference to the page and line of the transcript for verification. It now reads:

''Where the parts of the typewritten record relied upon on appeal are required to be printed in the briefs (Code Civ. Proc., sec. 953a et seq.) it shall be sufficient to state therein the substance of such record parenthetically referring to the line and page of the typewritten transcript for verification. . . . ''

Because of the failure to comply with this rule it must be assumed that the challenged findings are amply supported by the evidence.

November 30, 1926, findings of fact and conclusions of law were adopted and filed, based upon which a judgment was entered. Subsequently, upon motion, these findings and judgment were set aside and other findings with modified conclusions of law were adopted and a new judgment entered thereon. From the order setting aside the later findings and judgment an appeal has been perfected.

A judgment may be set aside upon motion and another judgment entered in lieu thereof, where erroneous con-

clusions of law are adopted which are inconsistent with the findings of fact. In the event of such modification the conclusions of law should be amended to conform to the findings of fact and a judgment entered accordingly. (Sec. 663, Code Civ. Proc.; *Gale* v. *Dixon,* 91 Cal. App. 529 [267 Pac. 342] ; *Modoc Co-operative Assn.* v. *Porter,* 11 Cal. App. 274 [104 Pac. 710].) From the order granting this motion an appeal may be taken in the same manner as from an order which is made after final judgment. (Sec. 663a, Code Civ. Proc.) Upon appeal from this order, the question to be determined is whether the original conclusions of law were in conflict with the findings of fact. A single set of findings and judgment were entered in the three consolidated cases which are under consideration. In the case of *Buchanan* v. *Kitts,* which is one of these three cases, the facts heretofore narrated, constituting the cause directly involved in the joint adventure of Irer and Gawn, were alleged, together with additional facts to the effect that Gawn, as a part of his contribution to the enterprise, had delivered to Kitts a certain mortgage upon other property, with directions to sell it and apply the proceeds to the payment of claims for labor and material furnished in the construction of the bungalow court; that obligations were incurred on that account in the aggregate amount of $1780.60, which claims were paid by Buchanan and then assigned to him for a valuable consideration and that he thereupon became the owner and holder thereof; that the mortgage was sold by Kitts for $1800, which money he refused to apply on said claims pursuant to instructions, but still holds the same in violation of his trust; that the enterprise was abandoned, a suit was commenced for an accounting between the joint adventurers and by mutual consent a receiver was appointed and the bungalow property was sold and conveyed to the plaintiff Buchanan for $2,000, subject to all mortgages, claims and liens.

The plaintiff prayed that Kitts be required to account for and pay to him said sum of money. The answer admitted substantially all the facts alleged except that it was stated that the $1800 was held by Kitts to be applied on the payment of said bills only when directed by the joint adventurers, and that the bungalow court was never completed and the defendant Kitts was not instructed to pay the claims. Upon

trial the court found all of the aforesaid allegations of the complaint to be true, except that it was not found that the claims had been assigned to the plaintiff Buchanan. The court further found that Buchanan bought the bungalow property because of the promises made to him by the receiver, Gawn and Kitts, to the effect that the $1800 held by Kitts would be applied to the payment of the claims, but that this promise was made without the knowledge or consent of Irer. It was then found that the equity of Irer and Gawn "*in and to said real property*" was sold and conveyed to Buchanan in consideration of $2,000 "subject to all existing encumbrances, liens and claims . . . amounting to approximately $10,000 in addition to the $20,000 mortgage against the property."

Based upon these findings, as a conclusion of law, the court first held that Buchanan was entitled to a judgment against Kitts for the sum of $1800. This conclusion seems to have been based upon the theory that the sale of the property was procured by the fraudulent oral promise of the receiver, Gawn and Kitts, to see that the $1800 was contributed to the payment of debts. The court seems also to have first assumed that the purchase of the real property carried with it all the other assets of the joint adventure. Fraud, however, was not pleaded, and unfortunately the alleged agreement to apply the $1800 to the payment of debts was not in writing or signed by the interested parties to be charged. It was, therefore, not enforceable. Moreover it was found by the court to have been made without the knowledge or consent of Irer, one of the material parties to the joint adventure, who was vitally interested in the enterprise and the sale of the property. According to the findings the sale does not purport to convey any assets belonging to the joint adventure except the right, title and interest in the bungalow property. The $1800 constituted a trust fund, which was a money asset of the joint enterprise entirely independent of the sale and conveyance of the real property. It cannot be said that real or personal property entirely separate and distinct from the bungalow property, which was all that was sold, would pass to the purchaser in the absence of a written contract to that effect. If an assignment of these claims had actually been made to the plaintiff Buchanan, an appropriate action would lie

against Kitts, the holder of the trust fund. ▮▮ The court, however, failed to find that such an assignment occurred, and in this action for an accounting the court first erroneously concluded that this $1800 fund passed to the plaintiff Buchanan by virtue of the purchase of the bungalow property. It therefore follows a discrepancy existed between the original findings of fact and conclusions of law which the court was authorized to correct pursuant to the provisions of section 663 of the Code of Civil Procedure. This is precisely what the court did, setting aside the conclusions of law and judgment and adopting modified conclusions of law to conform to its findings of fact, upon which a new judgment was entered holding that the plaintiff was not entitled to judgment for this fund of $1800, but that, upon the contrary, the money belonged to the assets of the joint adventure and should be paid to the receiver thereof.

Since this inconsistency existed between the original findings of fact and conclusions of law which authorized the modification of the conclusions of law and judgment, it was not error to add to the judgment a provision holding that the joint adventurers were equally liable for the losses of the enterprise, for this declaration followed the original findings as a mere matter of law. The appeal from the order setting aside the original findings and judgment is without merit. The case of *Hughes* v. *DeMund,* 96 Cal. App. 365 [274 Pac. 405], cited by appellant Gawn, is not in conflict with the law applicable to the facts of the present case. In that case one judge heard the evidence in an action for partnership accounting and adopted findings of fact. Another judge who did not hear this evidence subsequently set the findings aside and adopted other findings of fact. As the court very properly says in its opinion: ''The findings of *fact* . . . were final on the issues therein,'' and could not properly be set aside in the proceeding. But in the present case the findings of fact based upon the evidence formerly adduced were not modified or disturbed, but remained in the precise form in which they were adopted. All that the court attempted to do in the present case was to modify the conclusions of law pursuant to section 663 of the Code of Civil Procedure to conform to the facts adopted by the former trial judge. This became a mere matter of applying the principles of law to the facts which had been

previously ascertained and found by another judge. The very purpose of the adoption of the code provision above mentioned was to permit a trial judge to remedy a mistake of law applicable to the ascertained facts, without the necessity of requiring the cost and delay of an appeal.

Subsequent to the filing of the original complaint by Irer for an accounting, upon motion under section 379 of the Code of Civil Procedure, W. J. Kitts, who held possession of a portion of the joint adventure funds involved in the controversy, was made a party defendant. A pleading which was denominated a supplemental complaint was filed setting up the facts with relation to the custody of the trust funds. On appeal from the final judgment the defendant Kitts claims that he was improperly united as a party defendant, and that the office of a supplemental complaint is to allege only new matter which occurs after the filing of the original complaint or answer. (Sec. 464, Code Civ. Proc.) He asserts that all of the facts which are alleged in the pleading designated as a supplemental complaint existed before the filing of the original complaint. This is true. The facts, however, indicate that he was a proper party to the action and that the new matter would have been appropriate to set up in an amended complaint. A pleading will not be measured by its title alone. The appropriate allegations which it contains will determine the nature of the document. There was no error in permitting the filing of this pleading. (*Stark* v. *Hoeft*, 205 Cal. 102 [269 Pac. 1105, 1107].)

The defendant Kitts may not complain because the receiver was not made a party to the action. A receiver merely holds the custody of the property involved in the litigation, in behalf of the court for the real owners thereof, and the court may direct the delivery to the receiver of specific property which is involved in the litigation. (22 Cal. Jur. 493, sec. 79.) An objection on the ground of nonjoinder of parties plaintiff or defendant must be presented by demurrer or answer in the manner provided by statute, or it will be deemed to have been waived. (20 Cal. Jur. 573, sec. 56; *Stackpole* v. *Pacific Gas & Elec. Co.*, 181 Cal. 700 [186 Pac. 354]; *Breitenbucher* v. *Oppenheim*, 160 Cal. 98 [116 Pac. 55].) The objection on the part of

the defendant Kitts to the nonjoinder of the receiver as a party defendant comes too late when it is urged on appeal for the first time, and is therefore without merit.

The records in these consolidated cases seem to be free from prejudicial error. The order of January 13, 1927, vacating the findings and judgment dated November 30, 1926, and which order authorized the amendment and modification of the conclusions of law so as to conform to the findings of fact theretofore adopted, and permitting the entry of an amended judgment, is affirmed. The subsequent judgment dated and filed February 3, 1927, from which the several appeals are herein prosecuted, is also affirmed.

Plummer, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 15, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 15, 1929.

All the Justices present concurred.